UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| REDMELLON, L.L.C., CANAL STREET 1, L.LC, and E. NEAL MORRIS, III | CIVIL ACTION |
| VERSUS | NO: 2:23-cv-5754 |
| MOHAMED "HAMMY" HALUM, 1001 CANAL, L.L.C., 1015 CANAL, L.L.C., 934 CANAL, L.L.C., JOHN C. WILLIAMS, and JOHN C. WILLIAMS ARCHITECTS, L.L.C. | SECTION: T (5) |

## ORDER AND REASONS

Before the Court is Defendants' Joint Motion for Partial Dismissal for Counts I–IV and Motion to Dismiss Counts V–XI, R. Doc. 36. For the following reasons, the Court **GRANTS** Defendants' Motion for Partial Dismissal for Counts I–IV and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Counts V–XI.

## BACKGROUND[1]

This case arises from a construction development dispute during the rehabilitation and redevelopment of several properties on Canal Street in New Orleans, Louisiana ("the Project"). Plaintiffs Redmellon, LLC ("Redmellon"), a real estate development company, E. Neal Morris, Redmellon's principal, and Canal Street 1, LLC, a company formed by Morris, (collectively "Plaintiffs"), assert Copyright Act and state law claims against Defendants Mohamed "Hammy"

---

[1] The Court accepts all the well-pled factual allegations of the complaint as true and views them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

1

Halum, Halum's owned companies, 1001 Canal, LLC, 1015 Canal, LLC, and 934 Canal, LLC (collectively the "Canal Defendants"), an architectural firm, John C. Williams Architects, LLC ("JCWA"), and its principal John C. Williams (collectively "Defendants").

In 2018, Defendant Halum approached Plaintiff Morris about developing the upper floors of Halum's properties that would compose the Project. R. Doc. 31 at ¶ 17. From the outset, Defendant Halum represented and agreed that Plaintiffs would own the pre-development activity work product if the venture did not proceed on terms agreeable to Plaintiffs and Defendant Halum. *Id.*

After the initial approach, Halum and Morris executed a document titled the "Pre-Development Agreement" ("the PDA") on December 10, 2018. *Id.*; R. Doc. 36-3 at 7–9. The PDA starts with:

> "The purpose of this document is to lay out the terms and conditions which shall form the framework of a good faith negotiation towards a definitive Final Development Agreement, Partnership Agreement for a 'Business Venture'"

R. Doc. 36-3 at 7. The PDA contemplated that Morris and Halum would form a joint venture limited liability company and enter into a development services agreement with Redmellon. R. Doc. 31 at ¶ 17. The PDA, among other alleged promises, called for Redmellon to begin the development process. Plaintiff Morris later organized Plaintiff Canal Street 1, LLC, to make pre-development contributions to the project. *Id.* Plaintiffs maintain that Halum agreed to reimburse Plaintiffs for pre-development activities when final development agreements were reached and construction financing closed *Id.* at ¶ 18. However, the PDA's last two clauses state:

2

> "If upon 6 months time from the execution of this agreement Hammy Halum and Halum Ventures are not reasonably satisfied with the progress of the drafting of the partnership agreement, development agreement, or the pre-development of the Project, Hammy Ventures may declare this agreement null and void with each party owing no obligation to the other.
>
> Further, nothing herein shall be deemed to give rise to any legal obligations, such obligations arising, if at all, only upon the execution of mutually agreeable documentation and other required agreements referenced herein."

R. Doc. 36-3 at 9.

Plaintiffs retained Trapolin-Peer Architects ("Trapolin-Peer") at Redmellon's expense to help develop designs, drawings, architectural plans, structural engineering plans, mechanical plans, electrical plans, plumbing plans, specifications, and construction documents for the project ("the Project Materials"). R. Doc. 31 at ¶ 20. Redmellon later obtained a registered copyright to the designs contained in the Project Materials ("the Copyrighted Plans"). *Id.* ¶ 21. With the Project Materials, Plaintiffs prepared, submitted, and filed Louisiana Historic Rehabilitation Commercial Tax Credit Applications with the Louisiana Office of Cultural Development, Division of Historic Preservation, and Historic Preservation Certification Applications with the Department of Interior, National Park Service (collectively, the "Tax Credit Applications"). *Id.* ¶ 22. The Tax Credit Applications were approved. *Id.* These Tax Credit Applications were essential to the project and required Plaintiffs to develop creative solutions for the Project's challenges, including preserving the historical significance of the buildings, complying with modern building and life-safety code

3

requirements, and maintaining the first-floor retail space. *Id.* ¶ 19, 22.

Halum received copies of the Project Materials and knew he could only copy, use, rely on, or share those materials and work product if a final development agreement were reached with Plaintiffs. *Id.* ¶ 32. In early 2020, Halum informed Plaintiff Morris he could not reach a final development agreement. *Id.* ¶ 28. Halum later worked with Defendants Williams and JCWA on a similar plan to the Project, again to redevelop the Canal properties. *Id.* The Defendants incorporated and copied significant and substantially similar elements of the Project Materials, including the Copyrighted Plans, into the planning, development, and construction of the new project without consent or authorization. *Id.* ¶¶ 28–30. Defendants knew they were not supposed to rely on the Project Materials because they were marked with "Trapolin-Peer Architects." *Id.* ¶ 33.

Defendants did not file new Tax Credit Applications in connection with the Project. *Id.* ¶ 34. Instead, Defendants continued with the Tax Credit Applications developed by the Plaintiffs and filed amendments which referenced and depended on the Project Design and the Copyrighted Plans. *Id.* In such Tax Credit Applications, Defendants relied on a favorable ruling from the National Park Service obtained by Plaintiffs and failed to disclose that they were not authorized to use Plaintiffs' work product. *Id.* ¶¶ 34, 76, 83, 90, 97. Defendants filed amendments to the Tax Credit Applications "within the last year," including on October 4, 2022, before Plaintiff filed this action on October 3, 2023. *Id.* ¶ 34; R. Doc. 39 at p 18.

Plaintiffs' initial Complaint alleged breach of contract claims against Halum, 1001 Canal, 1015 Canal, and 934 Canal, and state law claims against all defendants. R. Doc. 1. The Court

4

granted Defendants' Motion to Dismiss on the grounds that Plaintiffs improperly imposed individual liability merely because Defendants were members or managers of LLCs and granted leave to amend. R Doc. 28. Plaintiffs amended their complaint on February 20, 2024. R. Doc. 31. Plaintiffs now assert violations under 17 U.S.C. § 101, *et seq.*, ("the Copyright Act") against the Canal Defendants (Count I), JCWA (Count II), Halum (Count III), and Williams (Count IV). Count V asserts a breach of contract and an alternative detrimental reliance claim against Defendant Halum. Counts VI–IX are Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") claims against the Canal Defendants, JCWA, Halum, and Williams respectively. Counts X–XI are civil conspiracy and unjust enrichment claims against all defendants.

## LAW & ANALYSIS

1. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Fed. R. Civ. P. 8(a), a "short and plain statement of the claim" is required. *Id*. When evaluating a 12(b)(6) motion, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.

2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). However, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995)).

2. **Counts I–IV: Copyright Act**

Plaintiffs' copyright claims seek actual damages, statutory penalties, and attorneys' costs and fees. *See* R. Doc. 31 ¶¶ 46, 51, 57, 63. Defendants move to dismiss Plaintiffs' request for statutory penalties and attorneys' costs and fees under the Copyright Act. R. Doc. 36-2 at 6-7.

17 U.S.C § 504 allows a party to recover statutory penalties, and attorneys' costs and fees. However, if the alleged infringement occurs *before* the copyright registration, the plaintiff is not entitled to statutory penalties or attorneys' costs and fees. *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992) (rejecting a claim for recovery of statutory damages or attorneys' fees when the infringement began before registration). Plaintiffs concede they are not entitled to these damages because the Copyrighted Plans were registered in September 2023—after the alleged infringement. R. Doc. 36-3 at 3–6; R. Doc. 39 at 9–10.

Therefore, the Court dismisses Plaintiffs' claim for statutory penalties and attorneys' costs and fees for Counts I–IV.

3. **Count V: Breach of Contract & Detrimental Reliance**

   a. **Breach of Contract**

Halum moves to dismiss Plaintiffs' breach of contract and alternative detrimental reliance claim because the PDA is allegedly unenforceable. R. Doc. 36-2 at 15–18. He argues that the PDA is the only "contract" between the parties. *Id.* at 16. Halum argues the PDA is nothing more than a "letter of intent" because it explicitly includes language that, but for "the execution of mutually agreeable documentation and other required agreements," no legal rights vest. *Id*. Because the parties never reached a subsequent binding agreement, Halum contends Plaintiffs cannot assert a breach of contract claim. *Id.* at 18.

Plaintiffs argue the breach of contract claim should survive dismissal because pre-development agreements can be enforceable, and the breach claim is not limited to the PDA. R. Doc. 39 at 22. Plaintiffs contend that similar pre-enforcement agreements, coupled with evidence the parties intended to be bound by such agreement, survive a motion to dismiss. *Id.* Here, they argue, because Halum took actions "subsequent to the agreement," his alleged intent was to be bound by the PDA. *Id.* at 23. They further argue that the breach of contract claim allegedly goes beyond the PDA because Halum's other representations and agreements, including representations that Plaintiffs would own the work product of pre-development activities, are binding. *See id.*; R. Doc. 31 at ¶¶ 17–18. Plaintiffs also assert these additional representations at least constitute a detrimental reliance claim. R. Doc. 39 at 24–25.

Under Louisiana law, the essential elements of a breach of contract claim are: (1) the existence of a contract; (2) the party's breach thereof; and (3) resulting damages. *Aya Healthcare, Inc. v. Bliant Specialty Hosp.*, LLC, No. 21-2182, 2022 U.S. Dist. LEXIS 237764, at *3 (E.D. La. Aug. 9, 2022); *Allday v. Newpark Square I Off. Condo. Ass'n*, 20-358 (La. App. 5 Cir. 8/18/21)

327 So. 3d 566, 574. "[W]hether a binding obligation exist[s] upon the execution of a[n] [initial] letter of intent…or only upon the execution of a later, more comprehensive document, depends upon the intentions of the parties." *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1065 (5th Cir. 1993). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047; *Badeaux v. Eymard Bros. Towing Co., Inc.*, 568 F. Supp. 3d 645, 653 (E.D. La. 2021). Documents that disclaim contractual duties are not contracts. *See, e.g., Hensley v. Zeigler*, No. CV 23-2066, 2023 WL 8701197, at *3 (E.D. La. Dec. 15, 2023) (a document's language that it was "nonbinding on all Parties…[and] require[d] further negotiation and documentation" was sufficient evidence that no contract existed); *Spillway Invs., L.L.C. v. Pilot Travel Centers LLC*, No. CIV.A. 04-2451, 2005 WL 517498, at *5 (E.D. La. Feb. 22, 2005) (where an "agreement is made expressly contingent upon the fulfillment of certain conditions and the execution of a mutually-acceptable agreement, the terms of the agreement are obviously still subject to negotiation and not yet final.")

> The PDA's clear language indicates it is non-binding. The PDA expressly states: "[N]othing herein shall be deemed to give rise to any legal obligations, such obligations arising, if at all, only upon the execution of mutually agreeable documentation and other required agreements referenced herein."

R. Doc. 36-3 at 9. In other words, no contractual obligations come from the PDA until "mutually agreeable documentation" is executed. This language is clear, and the code requires no further analysis. La. Civ. Code art. 2046.

The PDA's purpose is also evidenced by its plain language. "The purpose…is to lay out the terms and conditions which shall form the *framework* of a good faith *negotiation*." R. Doc. 36-3 at 7 (emphasis added). Plaintiffs concede no final "binding venture and development agreements" were reached. *See* R. Doc. 31 at ¶ 27. Moreover, Plaintiff Morris sought a subsequent agreement. *See id.* ¶ 27, 32. Morris's failure to secure a written final agreement shows that he did not believe Halum was contractually bound by the PDA.

To be sure, in *Newport*, the Fifth Circuit did hold that there was a genuine issue of material fact as to whether a letter of intent was a binding contract. 6 F.3d at 1065–66. There, the parties executed a letter of intent which detailed their potential obligations in "prepar[ation] to enter into the transaction on substantially the following terms and conditions." *Id.* at 1062. However, it was unclear as to whether the letter gave rise to *any* contractual duties with language stating "[i]t is therefore not intended to be a *comprehensive* statement of our respective rights, duties and obligations which will be fully set forth in said document." *Id.* (emphasis added). Because the *Newport* letter was textually ambiguous, the court looked to the parties' subsequent actions and found a genuine dispute of material fact. *Id.* at 1065–66 (citing *Chevron U.S.A. Inc. v. Martin Exploration Co.*, 447 So. 2d 469, 472 (La. 1984)).

There is no such ambiguity here. The PDA has an explicit clause disclaiming legal obligations. Language that only "upon the execution of mutually agreeable documentation and

other required agreements" do contractual duties arise clearly "preclude[s] the agreement from being final until later agreements are reached." *Chevron U.S.A.*, 447 So. 2d. at 472.

The Complaint also fails to allege any other contractual agreement that supports a breach of contract claim. *See generally* R. Doc. 31. Plaintiffs' allegations of "subsequent agreements, representations, and conduct" rather go to a detrimental reliance claim. *See e.g., Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 555 (M.D. La. 2004), judgment entered, No. CIV.A. 99-1031-B-M1, 2004 WL 3244168 (M.D. La. Oct. 1, 2004), and *aff'd sub nom. Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484 (5th Cir. 2006) ("misrepresentations are important on the detrimental reliance claim, they do not support plaintiffs' breach of contract claim.")

### b. Detrimental Reliance

Defendant Halum argues that Plaintiffs cannot sustain the alternative detrimental reliance claim because it is objectively unreasonable to believe that Halum would be bound by his other "representations and conduct." R. Doc. 36-2 at 19. Halum maintains that the PDA contemplated it would eventually be replaced by a subsequent agreement. Therefore, Halum contends, "Plaintiffs should have known that Halum would not be bound absent a final agreement." *Id.*

Plaintiffs first assert they detrimentally relied on the PDA. R. Doc. 39 at 21–23. However, Plaintiffs also contend the PDA does not foreclose a detrimental reliance claim for Halum's additional representations—including that Plaintiffs would own pre-development work product. *Id.* 24–25. Plaintiffs allege they made substantial investments based on, in part, Halum's alleged representations before and after the PDA. *Id.*; R. Doc. 31 at ¶ 17. Thus, Plaintiffs maintain it is not

objectively unreasonable for them to rely on such conduct for a detrimental reliance claim.

Under Louisiana law, a claim of detrimental reliance requires "(1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.*, 376 F.3d 399, 403 (5th Cir. 2004). A plaintiff does not need to establish an enforceable contract as he would under a breach of contract claim. *Newport*, 6 F.3d at 1069. Rather, he must show that he detrimentally relied on a promise and that his reliance was reasonable. *Id.* Reasonable reliance is an extremely fact intensive inquiry. *Drs. Bethea,* 376 F.3d at 403. Nevertheless, the Fifth Circuit has found at summary judgment that reliance on terms outside a fully integrated, unambiguous contract is presumptively unreasonable. *See, e.g., Condrey v. SunTrust Bank of Ga.,* 429 F.3d 556, 565–66 (5th Cir. 2005).

As an inherently fact intensive matter, detrimental reliance is better assessed at summary judgement or trial. For now, Plaintiffs have alleged reliance on "Defendant Halum's representations that he would negotiate required agreements in good faith" before and after the PDA. R. Doc. 31 ¶ 18. Plaintiffs allege actual reliance by incurring "hundreds of thousands of dollars in pre-development expenses." *Id.* at 27.

Halum's cited examples of cases where detrimental reliance claims were dismissed are inapposite because (a) the PDA is not a contract, let alone a fully integrated one, and (b) the example cases were adjudicated at summary judgment. *Id.* at 656; *Condrey*, 429 F.3d at 565–66; *Velocity Energy Ltd. LLC v. Chevron USA Inc.*, 204 F. App'x 433 (5th Cir. 2006) (affirming dismissal of a detrimental reliance claim in light of a fully integrated contract at summary

11

judgment); *see also Matheson Tri-Gas, Inc. v. Williamson Gen. Contractors, Inc.*, No. 2:16-CV-1303, 2019 WL 1562247, at *5 (W.D. La. Feb. 28, 2019), *report and recommendation adopted*, No. 2:16-CV-01303, 2019 WL 1561369 (W.D. La. Apr. 10, 2019) (a detrimental reliance claim predicated on oral misrepresentations *survived* summary judgment because the written agreements were *not* fully integrated). Here, instead of at summary judgment, when the Court can consider discovery and testimony as to when and how Plaintiffs allegedly relied on Halum's representations, Plaintiffs' detrimental reliance claim survives dismissal.

4. **Counts VI–IX: LUTPA Violations**

Defendants move to dismiss Counts VI–IX because they are allegedly preempted by the Copyright Act and prescribed by Louisiana's one-year liberative prescription period. *See, e.g.,* R. Doc. 36-2 at 1, 7.

a. **Preemption**

A state-law cause of action is preempted if it falls "within the subject matter of copyright"; and "protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright." *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995). Prong One asks, "is state law protecting the same rights that the Copyright Act seeks to vindicate, or is it protecting against different types of interference?" *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 484 (5th Cir. 2016). For Prong Two, a state-law cause of action is equivalent to a federal copyright claim when the state-law elements mimic the copyright claim elements. *Daboub,* 42 F.3d at 290. When a state law claim has "one or more qualitatively different elements," it is not preempted by the Copyright Act. *Alcatel USA, Inc. v. DGI Techs., Inc*., 166 F.3d 772, 787 (5th Cir. 1999).

12

Defendants argue the Copyright Act preempts Plaintiffs' LUTPA claims. R. Doc. 36-2 at 8–9. It does not. Because LUTPA claims "require[] proof of fraud, misrepresentation or other unethical conduct [,] the relief it provides is not 'equivalent' to that in the Copyright Act and, thus, is not pre-empted." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 405 (5th Cir. 2000); *see also Express Lien, Inc. v. Nationwide Notice, Inc.*, No. CV 16-2926, 2016 WL 7097382, at *5 (E.D. La. Dec. 5, 2016). Counts VI–IX are therefore not preempted by the Copyright Act.

    b. **Prescription**

Defendants argue that Plaintiffs' LUTPA claims are also time-barred by Louisiana's one-year prescriptive period. La. R.S. 51:1409E. Because LUTPA claims are subject to a one-year prescriptive period and the complaint details that the first alleged infringement occurred in 2021, Defendants allege Plaintiffs are facially unable to assert LUTPA claims in 2023. R. Doc. 36-2 at 13. Defendants also argue the continuing tort doctrine does not apply because (a) Defendants' subsequent conduct is ongoing damage from a tort and (b) the doctrine is disfavored in copyright cases. *Id.* at 14.

Plaintiffs assert the LUTPA claims are beyond the alleged infringement. Rather, they say, Defendants allegedly committed ongoing torts by "continuing to pursue the Tax Credit Applications rather than filing new applications and suppressing the fact that they were not authorized to use the Plaintiffs' work product." R. Doc. 39 at 16. Plaintiffs also argue that R.S. La. 51:1409E supports a finding that the continuing tort doctrine applies in LUTPA claims. *Id.* at 19.

The Louisiana Supreme Court recently clarified that LUTPA actions "shall be subject to a

*liberative prescription* of one year running from the time of the transaction or act which gave rise to the right of action." *Law Indus., LLC v. Dep't of Educ.*, 378 So. 3d 3, 9 (La. 2024) (emphasis added). Instead of a preemptive period, prescriptive periods are subject to the continuing tort doctrine. *See, e.g.*, *Hunters Run Gun Club, LLC v. Baker*, No. CV 17-176-SDD-EWD, 2019 WL 3240044, at *5 (M.D. La. July 18, 2019). When the cause of the plaintiff's injury is a "continuous one giving rise to successive damages, prescription does not begin to run until the conduct which caused the damages ends." *Id.* (citing *Crump v. Sabine River Auth.*, 737 So. 2d 720, 726 (La. 1999); *Bustamento v. Tucker*, 607 So. 2d 532, 543 n.8 (La. 1992)). However, a continuing tort is "occasioned by unlawful acts, not the continuation of the ill effects of an original wrongful act." *Id.* (citing *Crump*, 737 So. 2d at 728).

Defendants spill much ink on the difference between ongoing action and ongoing damage in the copyright context. *Carbon Six Barrels, L.L.C. v. Proof Rsch., Inc.,* 83 F.4th 320, 325 (5th Cir. 2023). Yes, the distinction exists, and Louisiana courts do not apply the continuing tort doctrine when a tortfeasor merely fails to "right an initial wrong"—ongoing damage. *See, e.g.*, *Hogg v. Chevron USA, Inc*., 45 So. 3d 991, 1007 (La. 2010).

This is not such a case. Unlike *Carbon Six*, Plaintiffs plead that the Defendants took *affirmative* action within a year of the complaint by "submit[ting] Amendment 3 to the Tax Credit Application for 1009–1011 Canal Street on October 4, 2022, and stating that '[t]he penthouse design and setbacks are proportionally similar to the previous / currently approved design.'" R. Doc. 39 at 18 (citing R. Doc. 39-1). The *Carbon Six* allegations did not warrant the continuing tort doctrine because the complaint only alleged defendants *failed* to remedy an initial wrong—by not

14

withdrawing the trademark. 83 F.4th at 325. In other words, the *Carbon Six* defendants did not take *any* action to fix the original tort. Here, each tax amendment application arguably violates the LUTPA because it is a distinct, separate act that allegedly uses Plaintiffs' work product—which is purportedly forbidden. At this stage, Plaintiffs' allegations that Defendants are "continuing to pursue the Tax Credit Applications" with freshly filed amendments warrants the continuing tort doctrine. Without further attack, Plaintiffs' LUTPA claims survive dismissal.

5. **Count X: Civil Conspiracy**

Defendants contend Plaintiffs' civil conspiracy claim is preempted by the Copyright Act. R. Doc. 36-2 at 10–11. Although Defendants cannot point to any precedent within our district, they argue that an agreement to infringe is qualitatively the same as a Copyright Act violation. *Id.* at 11.

Plaintiffs argue their civil conspiracy claim goes beyond mere copying. R. Doc. 39 at 13–14. They contend their civil conspiracy claim includes Defendants' alleged agreement to take actions that violate the LUTPA by "proceed[ing] with and submit[ing] amendments to the Tax Credit Applications." R. Doc. 31 ¶ 120; R. Doc. 39 at 14.

Louisiana civil conspiracy requires that "(1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) [the act] resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result." *Crutcher-Tufts Resources, Inc. v. Tufts*, 2007-1556 (La. App. 4 Cir. 9/17/08), 992 So. 2d 1091, 1094. Other district courts hold when a conspiracy claim "only goes to an intent to form an agreement to copy and use copyrightable" materials, Copyright Act preemption applies. *Ultraflo Corp. v. Pelican*

15

*Tank Parts, Inc.*, 823 F. Supp. 2d 578, 588 (S.D. Tex. 2011). However, a "conspiracy claim is also not preempted by the Copyright Act" when a plaintiff alleges a conspiracy to commit another tort. *See, e.g., McConley v. Boise Bldg. Solutions Mfg.*, L.L.C., No. 05-cv-1006, 2006 WL 709599, at *6 (W.D. La. Mar. 21, 2006).

As previously discussed, Defendants' alleged actions with the Tax Credit Applications are not qualitatively identical to the copyright claims. Defendants do not attack the LUTPA claims or the conspiracy to violate the LUTPA claims on the merits. *See* R. Doc. 36-2. With surviving LUTPA claims, Plaintiffs can plead a conspiracy to violate the LUTPA for Defendants' alleged agreement to prepare and submit the Tax Credit Applications. *See, e.g., Davis v. Karl*, No. CIV.A. 10-875, 2010 WL 3312587, at *5 (E.D. La. Aug. 19, 2010); *Baker v. Petrolite Corp. v. Brent,* 2010 WL 924289 at *2 (E.D.La. Mar. 9, 2010).

6. **Count XI: Unjust Enrichment**

Defendants also argue Count XI's unjust enrichment claim is preempted. R. Doc. 36-2 at 11–12. Plaintiffs' unjust enrichment claim is "qualitatively identical" to the Copyright Act claims because it allegedly emanates from the alleged copying of the Project Materials. *Id.*

As before, state law claims are only preempted by the Copyright Act when (1) state-law claims fall "within the subject matter of copyright" and (2) the state-law "protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright." *Daboub*, 42 F.3d at 289. "In other words, is state law protecting the same rights that the Copyright Act seeks to vindicate, or is it protecting against different types of interference?" *GlobeRanger Corp.*, 836 F.3d at 484. If the state law claim has "one or more qualitatively different elements" to the Copyright Act, it is not

16

preempted. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999).

The elements for unjust enrichment in Louisiana are "(1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) there must be no other remedy at law." *Badeaux v. BP Expl. & Prod.*, 790 F. App'x 618, 620 (5th Cir. 2019) (citing *Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995)).

The Fifth Circuit has "le[ft] open the possibility that [] unjust enrichment claims" may not be preempted by the Copyright Act. *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs.*, Inc., 965 F.3d 365, 382 (5th Cir. 2020). It is the "nature of the unjust enrichment claim" that matters. *Id.* Although unjust enrichment claims predicated on mere copying are typically preempted, an unjust enrichment claim that "arises from breach of contractual and fiduciary duties among the parties" is not preempted. *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 865 (E.D. La. 2003). Rather if the claim is "in reality a further explanation of the damages that [plaintiff] intends to prove," it falls outside Copyright Act preemption. *Id.*

The complaint, when viewed in the light most favorable to Plaintiffs, goes beyond mere copying allegations. Plaintiffs allege they were injured by the "submission of amendments to and ongoing pursuit of the Tax Credit Applications" and use of predevelopment work product without Plaintiffs' approval. R. Doc. 31 at ¶ 17. To be sure, Defendants were allegedly not allowed to use Plaintiffs' work product, in part, because it was copyrighted. *See generally id*. Nevertheless, Plaintiffs independently allege that Defendants were not allowed to use Plaintiffs' pre-

17

development work product because "all Defendants entered into an agreement to use and take advantage of Plaintiffs' work product without their consent or involvement in the Project." *Id.* ¶ 102. At this stage, the Court need not find that "agreement" is limited to the PDA. *See* R. Doc. 31 ¶ 20 (alleging "Defendant Halum's representations [stated] he would negotiate required agreements in good faith" is separate from the PDA). Moreover, when the final validity of other claims is still in question, courts generally do not dismiss an unjust enrichment claim. *See, e.g., Schott, Tr. for Est. of InforMD, LLC v. Massengale*, No. CV 18-759-JWD-RLB, 2019 WL 4738795, at *17 (M.D. La. Sept. 27, 2019). Thus, there is no facial preemption by the Copyright Act for Plaintiffs' unjust enrichment claim. Accordingly,

**IT IS ORDERED** that Defendants' Joint Motion for Partial Dismissal Applicable to Counts I–IV is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Count V is **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' breach of contract claim is **DISMISSED WITH PREJUDICE**. Defendants' Motion to Dismiss Plaintiffs' alternative detrimental reliance claim is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Counts VI-XI is **DENIED.**

New Orleans, Louisiana, this 20th day of November 2024.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE